UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TAMMY SWANN,

        Plaintiff,

v.

        Case No. 15-cv-13645
        HON. GEORGE CARAM STEEH

WASHTENAW COUNTY,

        Defendant.
_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [DOC. 19]

Plaintiff Tammy Swann filed this failure to accommodate action under the Americans with Disabilities Act (ADA) and the Michigan Persons with Disabilities Civil Rights Act (PWDCRA) following the termination of her employment with defendant Washtenaw County's Community Support and Treatment Services (CSTS) program. Plaintiff contends that defendant terminated her employment rather than accommodate her reasonable request to restructure a nonessential function of her position. The matter is presently before the court on defendant's motion for summary judgment. The court heard oral argument on this motion on October 12, 2016. For the reasons stated below, defendant's motion for summary judgement is GRANTED.

## I. Background

In 2004, plaintiff began her employment with Washtenaw County as a vocational specialist in the County's CSTS program.  CSTS serves consumers with physical, mental, and developmental disabilities or illnesses, providing care and assistance to increase consumer's independence, community engagement, and personal fulfillment.  CSTS has vocational sites where consumers receive instruction in motor, social, and living skills, personal hygiene, and grooming.  CSTS also partners with community organizations and companies to provide employment or volunteer opportunities for consumers.  Consumers participating in these activities are placed in People Access Community Employment/Experience (PACE) groups.

Vocational specialists provide direct support and care for CSTS consumers.  A written job description lists duties of the position, including;

- Assist consumers with basic tasks like showering, using the bathroom, walking, and eating;
- Provide physical assistance to consumers who have trouble walking;
- Provide physical assistance to consumers following unpredictable events like accidents, injuries, or outbursts.

(Doc. 19-2 at 1-3).  Consumer safety is a significant concern.  Consumers may become upset, angry, or engage in aggressive or harmful behavior.  Vocational specialists are responsible for intervening, treating injuries, and helping the consumer transition back to productive behavior.  This responsibility may include lifting a consumer from the ground after an injury or outburst.

Lifting is a significant job function.  The written job description for vocational specialists states "[d]uties may require employee to exert 50 or more pounds of force occasionally, 20 to 50 pounds of force frequently, or 10 to 20 pounds of force constantly."  (Doc 19-2 at 2).  Further, CSTS management, plaintiff, and a fellow vocational specialist, Scott Shemwell, all testified that vocational specialists must lift to fulfill their job duties.  There are multiple staffing options for vocational specialists; working at a vocational center or with a PACE group, and serving consumer groups individually or with a partner.  The lifting requirement applies to all of these options.

At all times relevant to this case, plaintiff reported directly to her supervisor, Lydia Sattler.  Sattler reported to Krista Diephuis, the program administrator.  Diephuis reported to Trish Cortes, the executive director for the County's developmental disabilities program.  For the last seven years

of her employment, plaintiff and Michelle Allen, a fellow vocational specialist, worked with a PACE group. At an unspecified time between 2010 and 2012, plaintiff developed pain in her neck and back that limited her ability to lift. This pain resulted from an injury sustained decades earlier in a motorcycle accident. Allen was aware of plaintiff's condition and assisted by performing the duties which required plaintiff to lift.

In June 2013, CSTS altered its consumer groups, resulting in changes to the vocational specialist assignments. The PACE group that plaintiff and Allen worked with was reduced in size and Allen was assigned to serve the group independently. Plaintiff was assigned to a floater position, where she could be assigned to work alone or with a partner in a different consumer group on any given day.

Around this time, plaintiff's neck pain intensified, prompting her to take a leave of absence from June 20, 2013 until September 20, 2014. Plaintiff's pain did not improve during her leave. During this period, plaintiff conversed with Sattler and Michelle Murray, the County's human resources generalist, confirming that plaintiff's neck pain prohibited her from working. Plaintiff also provided medical documents to the County stating that she was unable to perform essential job functions. Early documents stated that plaintiff was unable to perform work of any kind, however, in August 2014,

plaintiff provided documents stating that she was unable to perform essential job functions, but could return to work with a 20 pound lifting restriction.

On August 25, 2014, upon reviewing the FMLA Return to Work form that plaintiff submitted in August 2014, (Doc. 19-2 at 134), Murray emailed Cortes, Human Resources director Diane Heidt, and Sattler to ask for their input to determine plaintiff's employment status. (Doc. 19-2 at 3-5). Diephuis and Sattler reviewed plaintiff's lifting restriction, the essential duties of a vocational specialist, and plaintiff's proposed accommodation; partnering plaintiff with another vocational specialist and requiring that partner to perform all lifting. Diephuis and Sattler concluded that plaintiff's lifting restriction prohibited her from performing her essential job duties and would be detrimental to consumers. Diephuis then emailed Murray, Cortes, Heidt, and Sattler stating that, upon review, the County would not be able to hold the vocational specialist position for plaintiff. On September 5, 2014, Murray mailed plaintiff a letter stating that, because of the indefinite nature of restrictions that the County was unable to accommodate, plaintiff's employment was being terminated, effective September 20, 2014.

## II. Legal Standard

Rule 56(c) empowers a court to render summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc) (citing Fed. R. Civ. P. 56(c)).

The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Distrib. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson*,

477 U.S. at 247-48 (emphasis in original); *see also Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence supporting the non-moving party. *Anderson*, 477 U.S. at 248, 252. Rather, there must be evidence from which a jury could reasonably find for the non-movant. *McLean*, 224 F.3d at 800 (citing *Anderson*, 477 U.S. at 252).

### III. Analysis

Defendant seeks summary judgment on plaintiff's claims for failure to accommodate under the ADA and the PWDCRA. "The Court will analyze the two statutes together because the PWDCRA 'substantially mirrors' the ADA." *Salazar v. Tribar Mfg., L.L.C.*, No. 14-12935, 2016 WL 795905, at *5 (E.D. Mich. Mar. 1, 2016) (quoting *Cotter v. Ajilon Servs., Inc.*, 287 F.3d


593, 597 (6th Cir. 2002) *abrogated on other grounds by Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312 (6th Cir. 2012) (en banc)).

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability in regards to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The statute defines "discriminate" to include "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

"In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) [she is] disabled within the meaning of the Act; (2) [she is] otherwise qualified for the position, with or without reasonable accommodation; (3) [her] employer knew or had reason to know about [her] disability; (4) [she] requested an accommodation, and (5) the employer failed to provide the necessary accommodation." *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011). This case turns

on element (2); whether plaintiff is otherwise qualified for the position of vocational specialist.

To be "otherwise qualified" for the job, the employee must show that she can perform the essential functions of the job, with or without accommodation. *Johnson*, 443 F. App'x at 983. Thus, the Court must determine whether lifting is an essential function of the vocational specialist position. If found to be an essential function, the Court must then consider whether plaintiff's proposed accommodation – partnering plaintiff with another vocational specialist who would perform all lifting over 20 pounds – is reasonable.

### A. Lifting is an Essential Function

Essential functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n). *See also Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017, 1022 (6th Cir. 2013) ("A job function is essential if its removal would fundamentally alter the position."). Essential functions do "not include the marginal functions of the position." 29 C.F.R. § 1630.2(n). "The inquiry into whether a function is essential is highly fact specific." *Hoskins v. Oakland Cnty. Sheriff's Dep't*, 227 F.3d 719, 726 (6th Cir. 2000). The determination "should reflect the actual functioning and circumstances

of the particular enterprise involved." *Hall v. United States Postal Serv.*, 857 F.2d 1073, 1079 (6th Cir. 1988). Courts, therefore, conduct a case-by case analysis of several factors. *See Keith*, 703 F.3d at 925-26. The ADA notes that "consideration shall be given to the employer's judgment as to what functions of a job are essential" and an employer's "written description" of the job. 42 U.S.C. § 12111(8). The regulations accompanying the ADA also direct consideration of the following additional factors;

> (iii) The amount of time spent on the job performing the function;
> (iv) The consequences of not requiring the incumbent to perform the function;
> (v) The terms of a collective bargaining agreement;
> (vi) The work experience of past incumbents in the job;
> (vii) The current work experience of incumbents in similar jobs.

29 C.F.R. § 1630.2(n)(3)(iii)-(vii).

In this case, the factors illustrate that lifting is an essential function of plaintiff's position. First, the employer judges lifting to be an essential function. The core purpose of plaintiff's position is providing care, including physical assistance, to adults with physical, mental, and developmental disabilities. Sattler, Crotes, Murray, Shemwell, Diephus, and Heidt all opined that lifting is an essential function of the vocational specialist position. (Doc 19-3 at 10-11; 19-7 at 4; 19-8 at 8, 11; 19-5 at 6, 8; 19-6 at

6; 19-9 at 5). Additionally, plaintiff herself appears to view lifting as an essential function. When questioned about essential functions in her deposition, plaintiff did not deny that lifting was essential. (Doc. 19-4 at 23). Plaintiff's Return to Work Statement further supports this view. This form asks health care providers if an employee is unable to perform any essential function of their job, elaborating that "the employee should supply you with information about the essential job functions." (Doc. 19-2 at 134). Thus, it appears that plaintiff indicated to her health care provider that lifting is an essential function.

The written job description in effect during plaintiff's employment includes multiple references to lifting including an explicit lifting requirement. Under the heading "physical demands," the written job description states that "[d]uties may require employees to exert 50 or more pounds of force occasionally, 20 to 50 pounds of force frequently, or 10 to 20 pounds of force constantly." (Doc. 19-2 at 2). The description provides several examples of tasks requiring lifting; providing physical support, assisting consumers in and out of vehicles, providing walking assistance, toileting, helping consumers with accidents and injuries, and resolving consumer outbursts. (Doc. 19-2 at 1-3). Additionally, vocational specialists working in PACE groups are required to help consumers complete their

community jobs, some of which may involve lifting.  *Id.*  Finally, the description states that employees are required to implement the consumer's Person Centered Plans, which can include physical needs requiring a vocational specialist's physical assistance.  *Id.*

The parties contest the amount of time vocational specialists spend lifting.  Defendant relies on the testimony of vocational specialist Shemwell that he lifts "every day" in connection to his responsibilities assisting consumers with their community jobs and unpredictable events like accidents, injuries, and outbursts.  (Doc. 19-5 at 7).  Plaintiff argues that lifting was seldom required, citing her own testimony that it was rare to lift over 20 pounds, (Doc. 19-4 at 14, 15, 27), as well as Allen's testimony to the same, (Doc. 19-10 at ¶ 6).  Plaintiff further asserts that she rarely lifted heavy items while assisting consumers with their community jobs, and never personally experienced an accident requiring her to lift a heavy amount of a consumer's body weight.  (Doc. 19-4 at 4, 27).  But, plaintiff acknowledged that such an accident could occur, and that she would need to be able to bear the weight if the occasion arose.  (Doc. 19-4 at 27).

Courts have previously found that, even if a function is rarely required, the consequences of failing to require the employee to perform that function may illustrate that it is essential.  In *Brickers v. Cleveland Bd.*

*Of Educ.*, 145 F.3d 846 (6th Cir. 1998), a discharged school bus driver serving handicapped students alleged that the defendant board of education failed to accommodate its disability under the ADA. *Id.* at 846, 848. The court concluded that

> Although, as [plaintiff] has argued, it may be true that an attendant seldom, if ever, must perform any lifting, the ability to lift would be crucial in an emergency situation, such as an accident or fire. Much like a police officer must have the skill required to use a firearm yet might never actually draw his or her weapon, it only stands to reason that a bus attendant charged with the supervision and care of a group of children with peculiar needs and limitations would be able to account for those needs and limitations in any foreseeable circumstance, regardless of whether that circumstance actually arises. A lifting requirement is one sensible means toward ensuring that a bus attendant will adequately protect his or her charges in the event of an emergency, however unlikely.

*Id.* at 849-50. *See also Hoskins*, 227 F.3d at 727 (refuting an argument that rarity makes a function nonessential, stating "[a]lthough a deputy one may be required physically to restrain inmates only infrequently, the potential for physical confrontation with inmates exists on a daily basis, and the consequences of failing to require a deputy to perform this function when the occasion arises could be a serious threat."). Like *Bickers* and *Hoskins*, even if vocational specialists are seldom required to lift, the consequence of not requiring plaintiff to perform this function is placing

- 13 -

defendant's consumers in a potentially dangerous situation. Vocational specialists must be able to provide consumers with physical assistance in the event of injury, accident, or outburst. Thus, the inability to lift risks consumers' health and safety.

Thus, even if lifting is seldom required, other factors – namely the employer's judgment, the written job description, and the consequences of not requiring performance – illustrate that lifting is an essential function of plaintiff's position.

**B. Plaintiff's Proposed Accommodation is Not Reasonable**

Reasonable accommodations are "[m]odifications or adjustments to the work environment, or to the manner or circumstances under which the position held or desired is customarily performed, that enable an individual with a disability who is qualified to perform the essential functions of that position." 29 C.F.R. § 1630.2(o)(1)(ii). The ADA requires reasonable accommodations only if the employee is a qualified individual, meaning that the employee must be able to "perform the essential functions" of the job "with or without reasonable accommodation." 42 U.S.C. §§ 12111(8); 12112(a), (b)(5).

"The reasonableness of a requested accommodation is generally a question of fact." *Henschel v. Clare Cty. Rd. Comm'n*, 737 F.3d 1017,

1025 (6th Cir. 2013). The regulations accompanying the ADA state that reasonable accommodations may include job restructuring and acquisition or modification of the responsibilities of an employee's existing job. 29 C.F.R. § 1630.2(o)(2)(ii). *See also Rorrer,* 743 F.3d at 1039. But "'job restructuring' within the meaning of the ADA only pertains to the restructuring of non-essential duties or marginal functions of a job." *Bratten v. SSI Servs., Inc.,* 185 F.3d 625, 632 (6th Cir. 1999). Accommodations that eliminate an essential function of the job are "per se reasonable." *E.E.O.C. v. Ford Motor Co.*, 782 F.3d 753 (6th Cir. 2015). *See also Hall v. Postal Serv.*, 857 F.2d 1073, 1078 (6th Cir. 1988). Further, "employers are not required to assign existing employees or hire new employees to perform certain [essential] functions or duties of a disabled employee's job which the employee cannot perform by virtue of [their] disability." *Bratten*, 185 F.3d at 632 (elaborating on the distinction that job-restructuring pertains only to non-essential duties or marginal functions of a job).

     Here, lifting is an essential function of plaintiff's position. As such, job-restructuring is not applicable. Furthermore, plaintiff's proposed accommodation eliminating this essential function is per se unreasonable. Thus, plaintiff cannot satisfy its burden on the second prima facie element of its claim.

## IV. Conclusion

Therefore, for the reasons stated above, defendant's motion for summary judgment is GRANTED.

IT IS SO ORDERED.

Dated: November 21, 2016

                                      s/George Caram Steeh
                                      GEORGE CARAM STEEH
                                      UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on November 22, 2016, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---